# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 24, 2006 Session

## STATE OF TENNESSEE v. TROY BROOKS

**Appeal from the Criminal Court for Wilson County**
**Nos. 05-0159-05-0164 and 05-0410-05-0411     J.O. Bond, Judge**

---

**No. M2006-00459-CCA-R9-CD - Filed December 6, 2006**

---

The Defendant, Troy Brooks,[1] who was formerly a licensed attorney in the State of Tennessee,[2] was indicted by a grand jury in Wilson County for five counts of theft over $10,000, four counts of theft over $1000, six counts of fraudulent use of a credit card in the amount of $1000 to $10,000, and one count of fraudulent use of a credit card in the amount of over $500. The offenses arose from the Defendant's misuse of nine clients' trust monies and credit card accounts during the course of several months. The Defendant requested pretrial diversion, and the district attorney general denied the Defendant's request. The Defendant filed a petition for writ of certiorari to the Wilson County Criminal Court, alleging that the district attorney general abused his discretion by denying pretrial diversion. The trial court denied the Defendant's petition. The Defendant filed a motion for interlocutory appeal of the trial court's decision, and this Court granted the Defendant's motion. This Court now affirms the judgment of the trial court and concludes that the district attorney general did not abuse his discretion by denying pretrial diversion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

G. Frank Lannom and Melanie R. Bean, Lebanon, Tennessee, for the appellant, Troy Brooks.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Tom P. Thompson, District Attorney General; and Robert Hibbett, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] The Defendant is also referred to in various portions of the record as Troy L. Brooks. This Court will refer to the Defendant as Troy Brooks, as listed on the indictment.

[2] The Defendant's law license was permanently suspended due to the actions that gave rise to these charges.

**OPINION**

This case arises from the misappropriation of approximately $185,000. The Defendant was formerly an attorney. The funds were misappropriated from nine of his clients. The Defendant was indicted on five counts of theft over $10,000, four counts of theft over $1000, six counts of fraudulent use of a credit card in the amount of $1000 to $10,000, and one count of fraudulent use of a credit card in the amount of over $500. Following the indictments, the Defendant requested pretrial diversion. The Wilson County District Attorney General denied the Defendant's request and provided the Defendant with a written response explaining the decision.

The Wilson County District Attorney analyzed eight factors in making the decision to deny pretrial diversion: (1) whether the Defendant would likely be a repeat offender; (2) the circumstances of the offense; (3) the criminal history of the Defendant; (4) the social history of the Defendant; (5) the mental and physical condition of the Defendant; (6) "other factors" favorable to the Defendant; (7) the State's factual evidence of the offenses; and (8) the Defendant's recitation of the facts.[3] Ultimately, the district attorney cited "five compelling reasons" for denying the Defendant's request for pretrial diversion:

> (1) The Defendant, a licensed attorney, being in a role of trust with his clients, knowingly committed theft of his clients' funds and made unauthorized charges to his clients' credit cards. (2) These crimes were not merely a casual taking of money, but were well thought out separate criminal acts. (3) The Defendant was untruthful with his clients when they questioned him about the money. (4) The magnitude and nature of the offenses involved included eight separate victims[,] with the amount of money stolen exceeding $180,000, [which is only worsened by the fact that] these crimes were committed in a position of trust. (5) Diversion will not meet the ends of justice and would be against public policy.

The Defendant filed a petition for writ of certiorari in the Wilson County Criminal Court, alleging that the district attorney had abused his discretion by denying the Defendant's request for pretrial diversion. At the hearing, the Defendant's attorney began by "announc[ing] an agreement"

---

[3]The Defendant's recitation of the facts explained that he became involved in gambling through a "get-rich-quick" scheme promising via email great investment opportunities in Nigerian oil and gas. The Defendant claims that he had "little if any difficulties with clients' funds or gambling" before this offer but that he was "aware from [his] research that oil and gas was prevalent in Nigeria and that it was a growing industry." The Defendant researched the offer in some depth and believed it to be a fabulous investment offer and thus "began using clients['] money for the investment with the full assurances that [he] would have the return of the money in time to take care of all disbursements." After the Defendant realized that this scheme was nothing more than a "very well designed [scam]," the Defendant began "on-line gambling, gambling in casinos and sports gambling through bookies." The Defendant stated that "gambling became an obsession" and he continued "under the false hope that [he] could recoup the funds until [he] was reported [to the Board of Professional Responsibility]."

between the defense and the State that the trial court be permitted to consider that the Defendant made "complete restitution" sometime in the period after the request for pretrial diversion was made. The record is clear that the district attorney assented to the Defendant's request that the trial judge consider the recent restitution in its assessment of whether the district attorney abused his discretion in denying pretrial diversion.

At the writ of certiorari hearing, the Defendant argued that he should not be penalized for the seriousness of the offenses he committed because the legislature permits pretrial diversion for all of his indicted crimes. Second, the Defendant argued that the fact that restitution was made should be a "very mitigating factor" because he "did what had to been done" to return the monies to the victims. Third, the Defendant argued that an attorney is not in a "position of trust" because "no case law . . . specifically refers to [an attorney being in] a position of trust." Fourth, the Defendant argued that the indicted offenses were not a complex and impulsive scheme, but instead were "no more an impulse or a complicated theft than somebody stealing . . . out of a store." Finally, the Defendant asserts that no facts in the district attorney's denial letter support the State's assertion that the Defendant lied to his clients regarding any misuse of the funds.

The State argued that the denial was based upon five factors enumerated in the written response to the Defendant's request for pretrial diversion. The State focused on the facts that "these crimes were not merely a casual taking of money but were well thought out and separate acts." Further, the State emphasized that the "magnitude of the offenses included [nine] separate victims with the amount of money stolen exceeding $180,000[, which] gives these crimes a high deterrence value." Finally, the State argued that these crimes were in fact committed by an individual in a "position of trust" that required him "to act in accordance with even a higher standard than that applied to the average citizen." The State noted that the attorney's oath contains a "sworn duty . . . to uphold the law . . . and has thereby breached the public trust" by violating that oath.

The trial court found that the Defendant "definitely [committed] a violation of the trust of the people who put their money and their faith in him as a lawyer to do what was right [and] what was legal." Further, the trial judge stated that pretrial diversion was not appropriate in this case because "the public will demand more out of the legal profession than just saying he can pay the money back, what he's got [sic] caught taking, and walk out of this." The trial judge heavily weighed his ruling on the fact of "how important it is that people have trust in the [justice] system and trust in the lawyers." The trial judge also concluded that attorneys have a "public trust because [their] licensing comes through a public act . . . that authorizes [an attorney] to have a license upon . . . taking that oath" to obey the law. Thus, the trial court found that the district attorney did not abuse his discretion in denying the Defendant pretrial diversion even when restitution was considered. The Defendant then filed a motion for interlocutory appeal challenging the trial court's ruling that the District Attorney had not abused his discretion in denying pretrial diversion. This Court granted the Defendant's motion and now considers the merits of the Defendant's appeal.

**Analysis**

Pretrial diversion is permitted for certain statutorily enumerated offenses. See Tenn. Code Ann. §§ 40-15-102 to-107. "The decision whether or not to accede to pretrial diversion rests within the discretion of the District Attorney General, subject to review by the trial court for abuse of prosecutorial discretion." State v. Hammersley, 650 S.W.2d 352, 353 (Tenn. 1983); see Tenn. Code Ann. § 40-15-105(b)(3). The district attorney should consider numerous factors regarding the defendant and the offense, including deterrence considerations, "the circumstances of the offense[,] . . . the defendant's criminal record, social history, the physical and mental condition of the defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant." Hammersley, 650 S.W.2d at 354-55.

Although the prosecutor has broad discretion to permit or deny pretrial diversion, "that discretion is not unbridled." Id. at 353. "The prosecutor is not at liberty to focus exclusively on some factors while ignoring others but 'must consider evidence which tends to show that the applicant is amenable to correction and is not likely to commit further criminal acts.'" State v. Kirk, 868 S.W.2d 739 (Tenn. Crim. App. 1993) (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). "If the decision to deny diversion is not based on consideration of all the relevant factors, the state must articulate why the factors considered outweigh the others." Kirk, 868 S.W.2d at 742 (citing State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989)).

If the prosecutor denies pretrial diversion, the defendant has "a right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion." Tenn. Code Ann. § 40-15-105(b)(3). "On review, the trial court must consider only the evidence considered by the district attorney general." State v. Bell, 69 S.W.3d 171, 177 (Tenn. 2002). An abuse of discretion may only be found where the prosecutor fails to consider all the relevant factors or reaches a decision not supported by substantial evidence. See id. Such improper prosecutorial discretion occurs if the trial court determines a "patent or gross abuse" of discretion exists. Pace v. State, 566 S.W.2d 861, 870 (Tenn. 1978). The defendant may further appeal the trial court's determination of whether the prosecutor committed an abuse of discretion. "On appeal, the appellate court is bound by factual findings made by the trial court unless the evidence preponderates against them." Bell, 69 S.W.3d at 177 (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999)).

After reviewing the district attorney's written denial of pretrial diversion and the trial court's ruling, we conclude that the evidence does not preponderate against the trial court's finding that the district attorney did not abuse his discretion. Specifically, we find that the trial court could properly conclude that the negative factors against the Defendant outweigh the positive considerations. Thus, the trial court correctly found that the district attorney's denial of pretrial diversion was within the purview of his prosecutorial discretion.

**1) Seriousness of the Offenses**

While it is undisputed that the Defendant has a favorable social history[4] and an unfortunate "gambling addiction that mitigates in his favor," the district attorney and the reviewing trial court could find that the other factors weigh heavily against the Defendant. Most importantly, the circumstances of the offense in this case demonstrate that the Defendant committed at least sixteen acts of theft or fraudulent use of credit cards. The Defendant's actions continued for several months and impacted nine of his clients. Over this time frame, the Defendant misappropriated over $185,000 of clients' funds. By his own admission, he intended to "cover[] up [his] thefts" by gambling and by taking loans from his family. Also by his own admission, he continued his attempts to "recoup the funds" until his actions were reported to the Board of Professional Responsibility and his license was suspended. The evidence before the district attorney and the reviewing trial court support the finding that these offenses constituted a deliberate and complex scheme to gamble with clients' funds and then to repay the accounts without the clients having any knowledge of the grave misuse of the funds. As this Court has previously held, "multiple thefts and . . . attempts to thwart responsibility" are precisely the type of considerations that show that an offense is particularly serious and may not be deserving of pretrial diversion. State v. Lonnie Russell "Rusty" Gray, No. 01C01-9703-CR-00078, 1998 WL 408616, at *3 (Tenn. Crim. App., Nashville, July 22, 1998). Thus, in this case, the trial court did not err in determining that the serious and deliberate nature of the offenses weighs heavily against this Defendant.

**2) Abuse of Position of Trust**

Further, the district attorney and the trial court determined that the Defendant was in a "position of trust" as an attorney. They both relied on the attorney's oath to uphold the law and the fact that the victims, relying upon that public oath, entrusted money and credit card account information to the Defendant. Relying on Woodson v. State, 608 S.W.2d 591 (Tenn. Crim. App. 1980), the district attorney noted that the Defendant "stands before the court as one who by committing a crime has violated his oath of office, and has thereby breached the public trust." Id. at 594. The trial court found that the underlying reason for an attorney's oath is to prevent harm to the public who will be entrusting their legal claims and their financial assets to members of the licensed bar. In our view, the district attorney and the trial court may properly consider that the Defendant was in a position of trust in this case and that the abuse of his client's trust may weigh heavily against him in the determination of his eligibility for pretrial diversion.

The Defendant argues that he was not in a position of trust because he was not a public official. At the writ of certiorari hearing, the Defendant stated that "[t]here are no cases . . . supporting a denial of . . . a private attorney pretrial diversion based on being in a position of . . . trust." In support of the Defendant's position, the term "public trust" is often used to refer to

---

[4]The Defendant's background shows that he is an active member in numerous church and charitable organizations in his community. The Defendant is also apparently very active with and supportive to his family. The Defendant has obviously obtained extensive education, which included receiving a bachelor's degree and a juris doctor degree and a license to practice law. The Defendant does not have any criminal history related to theft or embezzlement, but the Defendant has had a criminal conviction for driving under the influence, which detracts to some extent from the strength of his social history.

government employees or elected officials.  See, e.g., State v. Johnny Quent Crudup, No. M2004-01646-CCA-R9-CO, 2005 WL 1378774 (Tenn. Crim. App., Nashville, June 9, 2005) (holding that a city government employee who misused his employee credit card violated the public trust); State v. Donna F. Benson, No. W2001-01926-CCA-R3-CD, 2002 WL 31296110 (Tenn. Crim. App., Jackson, Oct. 8, 2002) (holding that a county criminal court clerk that accepted bribes violated the public trust); State v. Edward Arnold Rivera, No. W2001-00857-CCA-R9-CD, 2002 WL 1482655 (Tenn. Crim. App., Jackson, Feb. 4, 2002) (holding that a sheriff's deputy selling confiscated property for personal profit violated the public trust); State v. Tony Williams, No.W2001-00788-CCA-R9-CD, 2001 WL 1516979 (Tenn. Crim. App., Jackson, Nov. 21, 2001) (holding that a pretrial services officer accepting bribes violated the public trust).

However, the factor of abuse of a "position of trust" does allow the district attorney to deny pretrial diversion to individuals in the private sector.  In State v. Lonnie Russell "Rusty" Gray, this Court held that a private martial arts instructor who took his students' parents' payments for his personal needs abused his position of trust.  Gray, 1998 WL 408616, at *3.  Likewise, in State v. Charles Robert Harmuth, No. 01C01-9503-CC-00074, 1996 WL 429169 (Tenn. Crim. App., Nashville, Aug. 1, 1996), this Court held that a private medical doctor who utilized patients to "gain sufficient information to commit criminal violations" may be denied pretrial diversion based upon an abuse of a position of trust.  Thus, this Court has previously held private individuals to be responsible for abusing positions of trust when working with the public at large.  The fact that this Defendant took the attorney's oath and became an "officer of the court" only further demonstrates that he had a particularly honored and trusted position which he elected to abuse.  As such, we conclude that the evidence does not preponderate against the trial court's finding that the district attorney could properly weigh the Defendant's abuse of a position of trust against him in his assessment of pretrial diversion.

### 3)  Payment of Restitution

Although we conclude that the seriousness of the offenses and the abuse of the position of trust is sufficient in this case to uphold the trial court's finding that the district attorney did not abuse his discretion by denying the Defendant pretrial diversion, we will briefly discuss the Defendant's payment of restitution in this case.

The factual circumstances surrounding the restitution payment and the trial court's consideration of restitution are unique.  At the time when the Defendant requested pretrial diversion, the Defendant had not made restitution. Therefore, the district attorney did not consider restitution as a factor in assessing the Defendant's application for pretrial diversion.  During the time between the district attorney's denial of pretrial diversion and the writ of certiorari hearing, the Defendant managed to make restitution. At the writ of certiorari hearing, the Defendant and the State agreed that the trial judge could consider the Defendant's restitution in its assessment of whether the district attorney abused his discretion in denying pretrial diversion even though that information was not present before the district attorney at the time he made his initial decision.  This created an unusual situation because the role of the trial court is generally to assess whether the district attorney's decision was proper given the facts before him at the time of the decision.  The parties' stipulation

to allow the trial judge to consider additional facts, while not necessarily improper based on the unique circumstances herein, complicated the trial court's review of the matter.

Regardless, we agree with the trial court that the payment of restitution is not the crucial factor in determining whether the district attorney abused his discretion by denying pretrial diversion. Indeed, this Court has previously weighed against a defendant the fact that "[n]o attempt or proffer of restitution was made to the victims until criminal charges were brought." Gray, 1998 WL 408616, at *3. Here, the Defendant did not make restitution immediately after he was indicted or after he lost his law license but waited until immediately before his writ of certiorari hearing. Thus, the trial court could properly conclude that the Defendant's payment of restitution, while proper and commendable, does not entitle him to pretrial diversion in light of the serious nature of his offenses and the abuse of his position of trust.

## Conclusion

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE